**In the Matter of William K. HOLMES, Debtor.**

**William K. Holmes, Debtor,**

v.

**United States of America.**

**No. 02–52793 RFH.**

United States Bankruptcy Court, M.D. Georgia, Macon Division.

Nov. 10, 2003.

---

Joseph J. Burton, Jr., David D. Aughtry, Atlanta, GA, for Debtor.

Michael N. Wilcove, Washington, D.C., for United States of America.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, JR., Chief Judge.

William K. Holmes, Debtor, filed on July 28, 2003, his First Amended Plan of Reorganization. The United States of America, acting on behalf of the Internal Revenue Service, ("IRS"), filed an objection to confirmation on August 7, 2003. A hearing on confirmation of Debtor's proposed Chapter 11 plan was held on August 20, 2003, and September 30, 2003. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on July 1, 2002. Debtor's primary asset is a 6,708 acre tract of land (the "Farm Property") located in Bleckley County and Laurens County, Georgia. Debtor's proposed Chapter 11 plan is a plan of liquidation. Debtor proposes to sell the Farm Property through his Chapter 11 plan. The Court, from the evidence presented, is persuaded that the Farm Property should be sold as a single tract, that the fair market value is $12,240,000, and that a reasonable time to market the property in six to twelve months.

Debtor proposes to use the sales proceeds to pay the closing costs of the sale, the secured claims against the Farm Property, and the administrative claims. The remaining proceeds are to be deposited into a Distribution Fund.[1]

Debtor, in his disclosure statement, states that the secured claims against the Farm Property exceed $9,000,000. Debtor

---

1. First Amended Plan of Reorganization, Sections 4.01(a)(3) and 5.01, Document No. 101.

(hereafter "Debtor's Plan").

states that the Farm Property generates annual income of $100,000 to $200,000, before expenses.[2]

Debtor has filed an adversary proceeding against his former stock brokerage firm.[3] Debtor seeks $190,000,000 in compensatory damages and $100,000,000 in punitive damages. This is hotly contested litigation. It is uncertain when this litigation will be concluded and whether Debtor will prevail.

Debtor owes substantial federal income tax obligations. The amount that Debtor will be required to pay is uncertain. The IRS filed on May 19, 2003, an amended proof of claim for $10,558,072. The IRS asserts an unsecured priority claim of $9,372,245. This priority claim is nondischargeable in bankruptcy.[4] Debtor proposes to satisfy the priority tax claim by making semi-annual payments over a term of sixty months from the Effective Date of Debtor's Chapter 11 plan.[5] The remainder of the IRS's claim is a general unsecured claim. The IRS's claim is not secured by a tax lien on the Farm Property.

The Internal Revenue Code provides that the IRS may compromise any civil or criminal tax obligation. I.R.C. § 7122(a) (2002). The Secretary of the Treasury prescribes guidelines for the IRS to determine whether an offer-in-compromise is adequate and should be accepted. I.R.C. §§ 7122(c), 7701(a)(11)(2002).

■ "The decision to accept or reject a compromise offer is discretionary and cannot be compelled by any action." *Addington v. United States*, 75 F.Supp.2d 520, 524 (S.D.W.Va.1999). *See also In re Davison*, 156 B.R. 600, 602 (Bankr.E.D.Ark.1993).

The "decision to accept or reject an offer to compromise, as well as the terms and conditions agreed to, is left to the discretion of the Secretary." Treas. Reg. § 301.7122–1(c)(1)(2002), (published at 26 C.F.R. § 301.7122–1).

Debtor has offered to compromise his federal income tax obligations by making a cash payment of $621,236. It is uncertain whether the IRS will accept or even consider Debtor's offer.[6] Thus, Debtor's obligation to the IRS may be $621,236 or it may be $10,558,072. Jack Odom, C.P.A., prepared Debtor's offer-in-compromise. Mr. Odom testified that Debtor has the ability to satisfy an obligation of $621,236. The Court, from the evidence presented, is persuaded that Debtor cannot satisfy a tax obligation of $10,588,072.[7]

The United States argues that Debtor's proposed Chapter 11 plan is not feasible. The United States also objects to Debtor's proposal to pay the IRS's priority tax claim of $9,372,245 over a term of sixty months.

■ Section 1129(a)(11) of the Bankruptcy Code provides:

---

2. First Amended Disclosure Statement, Sections II. B, V. B, Document No. 62.

3. *Holmes v. Grubman (In re Holmes)*, Chapter 11, Case No. 02–52793 RFH, Adv. No. 03–5208 (Bankr.M.D. Ga. June 23, 2003).

4. *See* 11 U.S.C.A. § 523(a)(1)(West 1993 and Supp.2003).

5. Debtor's Plan, Section 2.01(b)(the remaining balance due on the priority claim will be paid one day prior to six years after assessment).

6. This issue is on appeal to the district court. *See* Notice of Appeal (filed Sept. 18, 2003), Document No. 123.

7. The appraised fair market value of the Farm Property is $12,240,000. Debtor states that the secured claims against the Farm Property exceed $9,000,000. The Farm Property is Debtor's primary asset. Debtor will have less than $3,000,000 in net proceeds to satisfy the IRS's claim of $10,588,072.

## § 1129. Confirmation of plan

(a) The court shall confirm a plan only if all of the following requirements are met:

. . .

> (11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C.A. § 1129(a)(11) (West 1993).

Section 1129(a)(11) of the Bankruptcy Code is often referred to as the feasibility requirement.[8] Debtor argues that section 1129(a)(11) does not apply to a Chapter 11 liquidating plan. Debtor argues that the phrase "unless such liquidation or reorganization is proposed in the plan" excludes the section for liquidating plans.

 "Although § 1129(a)(11) recognizes the possibility of liquidating plans, a planned liquidation does not create an exception to the feasibility requirement. Even liquidating plans must be feasible. Indeed, many of the cases discussing the feasibility issue arise in the context of liquidating plans much like the Plan in this Case." *In re Calvanese*, 169 B.R. 104, 106 (Bankr.E.D.Pa.1994).

"Although it is perfectly legitimate for a Chapter 11 debtor to adopt a plan that liquidates all or part of its assets, logic and authorities suggest that the feasibility analysis under such plans will vary somewhat from that used in 'true' reorganizations. . . . In particular, the courts in these [liquidation] cases were concerned over the absence of a reliable cash flow or proven earning power that could ensure regular payments to the creditors." *Resolution*

Trust Corp. v. Wood (In re Wood), 1991 WL 332637, *3 (W.D.Va.1991).

In *Danny Thomas Properties II L.P. v. Beal Bank. S.S.B. (In re Danny Thomas Properties L.P.)* [9], the debtors' Chapter 11 reorganization plans proposed to pay Beal's secured claim by making installment payments for ten years with a balloon payment for the balance. The plans included "drop dead" provisions that allowed Beal to foreclose if the debtors defaulted on their payments. The Eighth Circuit Court of Appeals held that the plans were not feasible and could not be confirmed. The circuit court stated in part:

> The debtors contend that the "drop dead" provisions make the reorganization plans feasible as a matter of law. They maintain that the "drop dead" provisions amount to liquidations and that because these liquidations are contemplated within the plans, the requirements of § 1129(a)(11) are automatically met. Beal contends that the provisions do not provide for liquidations, as that term is used in the bankruptcy laws, but are merely agreements by the debtors to consent to foreclosure proceedings. We agree with Beal that the "drop dead" provisions do not amount to liquidations for purposes of § 1129(a)(11).
>
> . . .
>
> Even if the "drop dead" provisions amounted to liquidations, we could not accept the debtors' contention that providing for liquidation in the event of a default in a reorganization plan renders a plan feasible as a matter of law. Were we to do so, a bankruptcy court would be required to find that even the most implausible of reorganization plans is feasible so long as the plan provided

---

**8.** See 7 *Collier on Bankruptcy* ¶ 1129.03[11] (15th ed. rev.2003).

**9.** 241 F.3d 959 (8th Cir.2001).

that the debtor would liquidate if the plan failed. To require the court to confirm a reorganization plan merely because it allows future liquidation would eliminate the court's duty under § 1129(a)(11) to protect creditors against "'visionary schemes,'" *In the Matter of Pizza of Hawaii, Inc.,* 761 F.2d 1374, 1382 (9th Cir.1985), quoting what is now *7 Collier on Bankruptcy* ¶ 1129.03[11] (Lawrence P. King ed., 15th ed. rev.2000). We therefore reject the debtors' contention that their plans are feasible as a matter of law.

241 F.3d at 962–63.

*See also In re Louden,* 69 B.R. 723, 725 (Bankr.E.D.Mo.1987) (Chapter 11 liquidating plan not feasible because it is predicated on unrealistically high valuation of real estate that is proposed to be sold.)

 A Chapter 11 plan is not feasible unless it has a reasonable assurance of success. A Chapter 11 plan must offer a reasonable prospect of success and be workable. *United States v. Haas (In re Haas),* 162 F.3d 1087,1090 (11th Cir.1998).

The Court is persuaded that Debtor must be able to perform the obligations called for by his proposed Chapter 11 plan. The Court is persuaded that Debtor will not be able to perform his obligations unless the IRS agrees to accept the Debtor's offer to compromise. It is uncertain whether the IRS will so agree.

The United States also objects to Debtor's proposal to pay the IRS's priority tax claim over a term of sixty months.[10] The United States argues that the net proceeds from the sale of the Farm Property should be applied to its claim. Debtor's income will cease when the Farm property is sold.

Since the IRS may not accept or even consider Debtor's offer to compromise, the Court, for purposes of confirmation, must assume Debtor's priority tax obligation to be $9,372,245. The Court must conclude from the evidence presented that Debtor does not have the ability to pay the IRS's priority tax claim of $9,372,245 over a term of sixty months as proposed in his Chapter 11 plan. The net proceeds from the sale of the Farm Property will not be sufficient to satisfy the priority tax claim. There is no evidence that Debtor has any income except for his farm income which will cease when the Farm Property is sold.

An order in accordance with this memorandum opinion will be entered this date.

---

**10.** *See* 11 U.S.C.A. § 1129(a)(9)(C)(West 1993) (priority tax claim can be satisfied by making deferred cash payments over a period not exceeding six years after the date of assessment).